Adherence of the majority to the original opinion, renders a rehearing futile, hence I did not ask for a rehearing, but submit my views as follows:
Appellant sought in the alternative a rate which would cover expenses and provide some return, not in excess of what would be fair, on its investment in Idaho, or a rate which would at least cover expenses of operation.
There was evidently confusion or disagreement between appellant, and respondent and its attorney, as to whether this was a valuation hearing or merely a rate hearing, and as to expenses divided into cost of service and depreciation charges.
While it is true the request of the attorney for the commission for valuation data was granted, the commission ultimately found as a fact that it was not a valuation *Page 583 
hearing and that appellant had not sustained the burden of proof resting upon it, not however because it had failed or refused to supply information as to valuation, but had so failed as to depreciation charges:
 "Commission's Findings" "III
"That the hearing pursuant to the scope of the application, was one for an increase in rates, sufficient to enableapplicant to meet its operating expenses and taxes, and inaddition thereto obtain a return upon the cost of its propertyin Idaho devoted to the public service; and in no wise a valuation hearing; the valuation of said property not being necessary, proper nor material to a fair and complete determination of the application. [Emphasis mine.]
* * * * * *
 "V
"That the company did not furnish all of the information requested by the commission, in particular the depreciation charges incident to the fixed capital since construction and the amount of money that would have been in the depreciation reserve fund if such fund had been kept showing the amount that would have been deposited in said fund and the disposition made of such money; that the company did not furnish a segregation of the depreciation reserve to show the amount of said reserve applicable to the property used and useful in the State of Idaho."
And then proceeds to find the question of depreciation outside the issues:
 "VII
"That the Commission fails to find or fix any rate of depreciation on the properties of the applicant in Idaho, for the reason that the finding of such rate and fixation thereof is outside the scope of this hearing."
The commission's determination of the case adversely to appellant rests on finding VIII, IX and X, that its losses were due to excessive expenses:
 "VIII
"That the Commission fails to find and determine the *Page 584 
expenses claimed, charged and incurred and disbursements made, for the reason that the evidence so offered is unsatisfactory, inadequate, and insufficient, leaving only the field of conjecture open to the Commission as a basis for any such finding.
 "IX
"That the burden of proof is on the Pacific Telephone and Telegraph Company to justify the increases applied for; that in all the evidence, testimony and exhibits presented by the Pacific Telephone and Telegraph Company in this case the only justification attempted lies in its claimed annual losses from operation.
 "X
"That the operating territory of the Pacific Telephone and Telegraph Company in Idaho is equally as favorable to an operating profit as other operating territories in Idaho wherein other utilities furnishing the same service are in operation."
It would seem then the opinion affirms on the point that appellant failed to furnish valuation information ("as would give the company a fair return on its Idaho investment") which the commission by its findings held had nothing to do with the case and was not affirmatively or negatively the basis of its decision.
As I understand the commission's decision, it rests on two points: First, that appellant's depreciation set-up was incorrect, and second, that on a comparative basis of advantageous adjacent territory and relative costs of service, and contemplating its entire system, appellant's expenses in Idaho were excessive and responsible for its losses, that is, excess of expense over revenue. The commission either abandoned or disregarded any question of valuation. Vide its attorneys' brief page 65:
"The rule that the first essential in fixing rates is to determine the valuation of the property and then to determine whether the rate is reasonable, is applicable where a reasonable return upon the investment is sought by the utility but does not apply where the utility is seeking a rate that will pay operating expenses and thus where, at most, the records of the appellant show a failure of the rate in force to pay operating expenses of the company, *Page 585 
it would be unreasonable to require or accept evidence of the value of the company's property, before the Commission could act. The matter of valuation is serious and costly; in the absence of an independent valuation by the Public Utility Commission simultaneously with that by the company, the company would be placed in an advantageous position at the hearing, because the whole subject matter would be peculiarly within its knowledge, and any cross-examination of its experts would be unavailing.
"A valuation is unnecessary in determining the reasonableness of an application for an increase in rates, when the company cannot under any reasonable circumstances expect to earn a fair return on the value of the operative property, no matter by what standard this valuation might be measured." (Emphasis mine.)
In other words, the commission held no increase was justified to even cover what appellant contends were its legitimate expenses and depreciation charges, hence no rate on any valuation would ensue, consequently valuation was out of the picture. No legitimate affirmance can thus rest on failure to furnish evidence of valuation.
It is contended no assignment of error challenged the commission's refusal to admit the proffered testimony of Dix (appellant's witness) as to valuation; the record thereof being self explanatory:
Direct examination by Mr. Rupp:
"Q. Please state your name?
A. I.F. Dix, Seattle, Washington.
Q. What is your position with the Pacific Company?
A. Vice-President and General Manager in Charge of the Washington-Idaho area.
Q. Have you prepared a statement of your experience in the telephone business?
A. I have.
(Statement Telephone experience — Petitioner's Exhibit No. 54, marked for identification.)
Q. The docket I hand you shows that experience?
A. It does, yes.
MR. RUPP: I offer in evidence Petitioner's Exhibit No. 54. *Page 586 
MR. THOMAS: No objection.
PRESIDENT CORNELL: Petitioner's Exhibit No. 54 will be admitted.
Q. Now in the various capacities in which you have been employed by the Pacific Company, have you had anything to do with making appraisals of property?
A. I have.
Q. And for what purpose were those appraisals made?
A. Made as a basis for rate making, purchases and for sales.
Q. How much in dollars, telephone property, have you appraised?
A. In excess of $140,000,000.00.
Q. Will you tell the Commission what your functions and duties as general manager of the Washington-Idaho area are?
A. Well, I have managerial responsibilities for this area.
Q. To what extent are you familiar with the properties of the company in Idaho?
A. I am familiar with them.
Q. With the exception of Mr. Flaeger, who has testified, what is the fact as to whether or not all the other witnesses who have testified at this hearing report to you?
A. They all do.
Q. What measure of control do you exercise over them?
A. Well they are all under my supervision.
Q. Do you know anything about the amount of property that the company has in the State of Idaho?
A. I do.
Q. Do you know anything about what it would cost to — cost of replacement of that property would be?
A. Yes.
MR. THOMAS: I object to that as immaterial to this inquiry, replacement value of that property, and for the same reasons heretofore objected to.
PRESIDENT CORNELL: The objection will be sustained.
MR. RUPP: May I suggest to the Commission that the cost of replacement of this property was the thing required by the Commission, and so far as I can recall the *Page 587 
preceding objections did not run to the cost of replacement at all — it ran to the cost of reproduction — replacement cost was something required by the Commission.
MR. THOMAS: The question was with reference to the original cost of production, that was the thought I had in mind.
MR. RUPP: What I propose to do by this witness is to ask him what a fair value of the company's property in the State of Idaho is.
MR. THOMAS: That same question was asked yesterday.
MR. RUPP: Yes, but Mr. Flaeger stated that he had never been in Lewiston before this hearing. This witness has. This is an entirely different witness.
MR. THOMAS: Of course our objection yesterday was primarily upon the ground that that would be immaterial, and furthermore that there should be and is better evidence, and there is no occasion for the use of secondary evidence of that value. I think there is better evidence of it.
MR. RUPP: Perhaps I might say now that in the last analysis Mr. Thomas' objection rather ran to the effect that this is not a valuation hearing at all, having to do solely with rates. Now if there is such a thing as a rate hearing, under all the circumstances, without a valuation hearing, that might be one thing — but it is my understanding of the decisions of the United States Supreme Court that in the last analysis what has to be determined in connection with a new schedule of rates is the fair value of the company's property, and the fair value, in the last analysis, is the judgment of the value of the man who is familiar with the property, and who takes into consideration the original cost, if known, the cost of replacement, if the original cost is not known, and the cost of reproduction — all those factors which enter into what the United States Supreme Court has held is fair value, and what I am proposing to do by this witness, who is in charge of the operations of the company in the state of Idaho, and who, if permitted to answer these questions, in my judgment, will show that he knows the various factors of value, and this question is just one of a series of questions *Page 588 
designed to show what the witness does know about these various factors which enter into a determination of fair value.
PRESIDENT CORNELL: Now in this matter, the Commission will go back to the original cause, original motion, and in view of the understanding in that case, unless the Commission requested you to furnish the information at this hearing now, it will not be entertained. However, it was never intended to go into this valuation proposition, so therefore you should continue along those lines. Any evidence you have as required by the Commission at the former hearing certainly will be most welcome, with the understanding of the motion we had at the former hearing.
MR. THOMAS: (After argument) I haven't had time to investigate this, or to go into the cases, and for that reason, unless somebody suggests something better, I would be willing that the ruling be withdrawn and to reserve a ruling on the matter until we have made a final determination as to whether or not our position in this valuation matter is erroneous, and I might say that if it is, and that the matter of valuation is proper in this case, then certainly I shall be profoundly surprised, and I think my associates would be too, and if so, I think we would be entitled to some further consideration because we all know that if it gets to a question of valuation the same right rests, and should rest, with the Commission to make a determination of that matter. That is what I had in mind. Now if somebody here has something better to suggest, in order not to unduly delay this matter and duplicate expense, I would be pleased to hear from them.
PRESIDENT CORNELL: Do you have anything to say, Mr. Hawley, or Mr. Rupp?
MR. HAWLEY: I think it will be quite satisfactory to reserve a ruling, but I think possibly it would be well to permit the questions to be answered by the witness Dix, with the reservation that a ruling on the subject will be made later, and then, we have at least the record available. I do not know whether counsel has any different ideas.
MR. RUPP: I have always been of the opinion that one *Page 589 
man's word is no man's word, and that everybody should have the right, in a judicial inquiry, to make a full and complete showing of what his position is in the controversy. I haven't the slightest disposition, so far as I am concerned, if Mr. Thomas feels subsequently that something should be done on his part, that that be done. I don't want to shut anybody off.
PRESIDENT CORNELL: The request of Mr. Hawley, and the State's counsel, will be granted, and decision of the motion made is withdrawn, and the Commission reserves the right to pass on this matter at a later time.
PRESIDENT CORNELL: Just a minute — Mr. Durham, do you have something you wish to say now?
MR. DURHAM: Yes, we have an appearance at the original hearing for certain protestants. To those I would like to add the name of the Lewiston Chamber of Commerce, as a protestant, against the increase and I would like to have the name of Marcus Ware entered as an attorney for the protestants.
PRESIDENT CORNELL: That will be granted.
Q. (By Mr. Rupp) I think the question asked you was whether or not you knew what it would cost to replace the property in Idaho. What is the fact, do you, or do you not know?
A. Yes, the amount as of December 31, 1937, was $1,141,174.77.
Q. Do you know what the cost of the reproduction of the property would be as of December 31, 1937?
MR. THOMAS: Just a moment, I would like to have it understood that we are objecting to all this testimony, without repeating the objection each time.
MR. RUPP: We will agree that it runs to it all, without repetition.
PRESIDENT CORNELL: All right.
Q. Do you know what the physical condition of the property is?
A. I haven't answered your previous question yet. The estimated cost of reproduction is $1,260,299.75.
Q. Do you know what the condition of the property is?
A. Yes, I do.
Q. What is the fact as to whether or not the company *Page 590 
has satisfactory connections with other telephone companies?
A. We do have such connections.
Q. Well, what in your opinion is the fair value of the company's property, used and useful and devoted to the public service in the State of Idaho?
A. $1,000,000.00.
Q. As of what date?
A. December 31, 1937.
Q. What would be your judgment as to the fair value of the property December 31, 1938 — do you know the amount of net additions made during last year?
A. Yes, in the neighborhood of $34,000.00.
Q. What in your judgment is the fair value of the property as of December 31, 1938?
A. I would say $1,134,000.00.
Q. Mr. Erb suggests this to me — in determining that fair value of the property, just what consideration have you given to the fact that we have a number of subscribers and plants in the State of Washington, which is connected with the Lewiston Exchange?
A. I have included that in stating the fair value.
Q. In other words, your determination of fair value is the amount on the books less the cost of replacement, and less the cost of reproduction, less depreciation?
A. Yes, it is.
MR. THOMAS: I will make a motion at this time that the testimony of Mr. Dix be stricken from the record, for the same reasons that was given to the opinion evidence upon the reproduction value, I think.
PRESIDENT CORNELL: The commission will take the objection under consideration, and reserve a ruling.
MR. RUPP: May I ask that the Reporter read the last objection.
(Objection read by Reporter.)
MR. THOMAS: For the further reason that no proper foundation has been laid, and that Mr. Dix has not and is not qualified to render such evidence.
PRESIDENT CORNELL: The same ruling will apply to this additional objection as to the objection to the original question. *Page 591 
MR. THOMAS: We have no questions.
PRESIDENT CORNELL: You may be excused."
Disregarding Judd's statements and the ruling on the Dix exhibit, does not dispose of the numerous other assignments of error charging the commission refused to allow the additional rates because less than expenses of the company and claimed erroneous consideration of depreciation.
If the return be sought for cost of service plus return on the investment it would seem clear that a valuation of such investment was a necessary prerequisite for proper determination. (Rural Tel. Co. v. Interstate Tel. Co., 55 Idaho 514,46 P.2d 723.)
The telephone company now urges it sought and seeks a rate at least to cover cost of service. My understanding of the opinion was it was written on the theory the cases had not distinguished between the necessity of a valuation for a rate covering only the cost of service and no return on the investment. If there is such a valid distinction and the utility seeks only a return which will cover the cost of service on an economical and efficient basis no valuation is necessary.
If the users cannot afford to pay a rate which will cover cost of economical and efficient service, what rate will be the meeting place between two such opposites; taking into consideration the bearing of a rate covering cost of service only on the Idaho property as compared with the entire system and the law applicable thereto? That is, may a rate on a feeder or branch line be less than the cost of service on that line, yet if such rate is all the users on such branch or division can afford to pay, nevertheless such rate be sufficient, as not depriving the company of its property without due process of law, if any such less-than-cost-of-service return on such branch contributes to the income and business of the entire system whereby a profit, that is, cost of service plus fair return on the entire system, results?
If so and the rate found by the commission be such rate, then the order should be affirmed on that ground rather than because an unnecessary valuation, expensive in the long run to all, was not made. Especially since respondent *Page 592 
in its brief page 16 disclaims the necessity of any valuation.
Appellant does not rely alone on the question of valuation but raises other errors on the points determined by the commission. Though appellant may have been vacillating as to whether valuation was or was not a prerequisite, the commission ruled it out and the case here should be determined on the theory on which the commission decided it.
I therefore dissent from the opinion as written.